In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 21-2029

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RICHARD E. WITKEMPER and ELLEN F. WITKEMPER,

*Defendants-Appellants.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:18-cv-00873 — **James R. Sweeney II**, *Judge.*

_____

ARGUED JANUARY 11, 2022 — DECIDED FEBRUARY 28, 2022

_____

Before EASTERBROOK, SCUDDER, and KIRSCH, *Circuit Judges.*

SCUDDER, *Circuit Judge.* This case began when Richard Witkemper, the owner of a small business, failed to withhold federal payroll taxes from his employees' wages. The failure caught up to him when the United States sued him and his wife to collect the unpaid taxes and related penalties. A bench trial ended in the government's favor, and the Witkempers now appeal the district court's determination that the government's collection efforts fell within the prescribed statute of

limitations. This issue presented is not close, and the Witkempers' counsel never should have pressed the point on appeal. We affirm.

**I**

**A**

Richard Witkemper was the president and sole shareholder of Maximum Spindle Utilization, Inc., a small manufacturing company in southern Indiana. The company had employees, but from 2004 to 2006 never complied with its obligation to withhold and remit federal income and insurance contribution taxes—so-called FICA taxes.

Maximum Spindle eventually went bankrupt. And because it could not fully collect the company's unpaid taxes during the bankruptcy proceedings, the IRS turned its attention to Richard Witkemper. In February 2008 the Service lodged an assessment totaling $385,705.54 and recorded a notice of a federal tax lien at the same time.

Witkemper seemed to respond to these developments, at least at first, by expressing a desire to settle with the IRS. In July 2008 he sent the IRS a signed Offer in Compromise—effectively a settlement offer. The next month, the Service accepted the Offer and the Witkempers' accompanying $150 filing fee. And soon after, Witkemper began making $500 payments, the required monthly minimum under the compromise. But apparently Witkemper fell on hard times or otherwise had second thoughts about making additional payments and sought to rescind the settlement. In February 2009, after the settlement had been in effect only 205 days, the IRS approved Witkemper's request to withdraw the Offer in Compromise.

Things only turned for the worse from there. Likely to evade enforcement of the federal tax liens, Witkemper then set in motion certain property transfers. To start, he and his wife purported to transfer their interest in their family home to their children. But after a series of subsequent transfers, the property ended up back with the Witkempers. In another sequence of transactions, Richard Witkemper transferred a commercial property interest he had to his wife. She eventually sold that property at a profit of $202,931.01, which she deposited into her checking account and used to pay personal expenses. Neither property transfer was made in exchange for any consideration, and the IRS viewed both transactions as essentially fraudulent conveyances.

By March 2018 the IRS ran out of patience and sued both Richard and Ellen Witkemper in federal court in southern Indiana to recover proceeds from the fraudulent property transfers and the unpaid FICA taxes and related penalties. The case proceeded to a one-day bench trial in October 2020. The district court ruled in the government's favor.

At trial, the Witkempers had no response to the merits of the government's position on the unpaid FICA taxes and related penalties, or for that matter on the challenged property transfers. Without a substantive defense, they turned to procedure and sought to challenge the timeliness of the government's collection and related notification actions.

*First*, the Witkempers argued that the government could not prove that its initial assessment of the FICA tax penalties fell within the deadline prescribed by Congress. They backed the contention solely by pointing to what they viewed as unreliable government records containing various clerical errors.

*Second*, the Witkempers claimed that because the government filed its federal complaint on March 16, 2018—more than 10 years after it assessed the FICA recovery penalties—the lawsuit was outside the applicable statute of limitations. And while an active Offer in Compromise would typically toll that 10-year period, the Witkempers argued that the government was not entitled to an extension of 205 days—the amount of time the Offer in Compromise had been in effect—because there was never an Offer in effect. Indeed, the Witkempers insisted that the Offer in Compromise on file with the IRS reflected forged signatures. And, as best we can tell, Richard Witkemper advanced this position without contesting that he had made payments pursuant to the terms and conditions of the Offer in Compromise.

The district court found none of this persuasive. In a lengthy opinion replete with careful factual findings, the district court concluded that each of the government's efforts to collect—both in assessing penalties and filing suit against the Witkempers—were timely. From there the district court saw no merit to the Witkempers' claims that the government's paperwork was rife with forgery. In the end, the district court entered judgment in the government's favor in the amount of $385,705.54.

The Witkempers now appeal.

### B

We have no trouble affirming the district court's ruling for the IRS. The government's proof of unpaid FICA taxes and related penalties, to say nothing of the fraudulent property conveyances, was overwhelming. Indeed, we have a hard time seeing why the Witkempers chose to go to trial. The

district court's opinion shows that the government's case against them was open and shut.

What most concerns us is how the Witkempers have approached their appeal. In raising two primary arguments, they proceed as if the bench trial never happened. Even more, they have paid no attention to the controlling—and deferential—standard under which we review the district court's findings of fact.

*First*, as to the initial assessment, the Witkempers argue on appeal, as they did at trial, that the government cannot prove it assessed penalties on February 18, 2008. They allege that the IRS's Certificates of Assessment are unreliable and fraudulent, given what appear to be typographic errors on at least one document. But these small clerical errors, as the district court explained, fall well short of showing the government documents lack authenticity or are unreliable. Though there may be some small inconsistencies in the Certificates of Assessment, the Witkempers point to no evidence that calls into question the date of the original assessment. In fact, aside from the Certificates of Assessment, there was other unchallenged evidence presented at trial that corroborated the February 18 assessment date.

*Second*, despite the Witkempers' insistence to the contrary, we see no issue with the government's timeliness in filing this lawsuit. The Witkempers are right that a 10-year statute of limitations applies to suits to recover penalties and that the relevant time to sue tolls upon the government's acceptance of an Offer in Compromise. See 26 U.S.C. §§ 6502(a); 6331(i)(5), 6331(k)(1)(A). But those observations do little to help the Witkempers. The evidentiary record contained more than enough to support the district court's finding that

Richard Witkemper signed and submitted an Offer in Compromise and that the government received and accepted that Offer. The government pointed out that Witkemper, despite professing to have not signed the settlement, acknowledged much of the other handwriting on the very same Offer was his. And the government entered into evidence hundreds of uncontested examples of his signature on other documents. Even more, despite claiming he never signed the Offer, Witkemper does not dispute that he submitted the many hundreds of dollars in payments and fees associated with it.

There is no way on this evidentiary record to say we are "left with a definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). Based on the overwhelming evidence presented at trial, the district court was well within bounds in assessing the credibility of and rejecting Witkemper's testimony that he did not sign the document. See *Morisch v. United States*, 653 F.3d 522, 529 (7th Cir. 2011) ("The credibility determinations that a judge renders as the finder of fact command a high degree of deference.") (quoting *Gicla v. United States*, 572 F.3d 407, 414 (7th Cir. 2009)). Plain and simple, the district court saw the case as overwhelmingly lopsided in the government's favor. So do we.

## II

What we have seen in this appeal has troubled us. The Witkempers' counsel, Jason Smith, has advanced arguments that have ignored the trial evidence and the deferential standard under which we must review the district court's findings of fact. When the government pointed this out in its opposition brief, Smith never replied—despite seeking an extension

of time within which to file a reply brief. And making matters worse, in oral argument Smith seemed surprised at the Court's questions about the trial evidence and standard governing our appellate review.

Unfortunately, we saw much of the same from Smith in another recent appeal, *Galloway v. Commissioner of Internal Revenue*, 2022 WL 400955 (7th Cir. 2022). There, Smith pressed arguments expressly foreclosed by statute; indeed, we lacked the authority to even consider the claims in his brief. In that case, too, the government pointed out Smith's obvious deficiencies to no avail—he once again failed to file a reply brief. And in oral argument Smith had no response to the substance of the government's position.

Right to it, Smith's performance over these two recent appeals falls well below the standards we expect from lawyers authorized to practice in our Court. See *Sambrano v. Mabus*, 663 F.3d 879, 882 (7th Cir. 2011) (describing the role courts have in protecting litigants from deficient legal representation). Twice in as many months, Smith has pressed frivolous arguments with no realistic prospect of prevailing. And so, too, are we aware that a district court in this Circuit recently imposed disciplinary sanctions against Smith in an order that did not mince words about his unacceptable performance. See generally Order Overruling Defendant's Objections to Magistrate Judge's Report and Recommendation, *Jackson County Bank v. DuSablon*, No. 1:18-cv-01346 (N.D. Ill. Feb. 12, 2020), ECF No. 81. In all of these cases Smith represented clients who deserved better.

Under Rule 46 of the Federal Rules of Appellate Procedure, we may suspend or disbar a member of our bar if that individual engages in "conduct unbecoming of a member of

the court's bar," Fed. R. App. P. 46(b)(1)(B)—conduct which is "contrary to professional standards [and] shows an unfitness to discharge continuing obligations to clients or the courts, or conduct inimical to the administration of justice." *In re Snyder*, 472 U.S. 634, 645 (1985).

Not taking this step lightly, what we have witnessed in this case and the recent *Galloway* appeal leads us to question Smith's fitness to practice before our Court. Accordingly, we order Jason Smith to show cause within 21 days of this decision why he should not be removed or suspended from the bar of this Court under Rule 46 of the Federal Rules of Appellate Procedure.

AFFIRMED WITH ORDER TO SHOW CAUSE.